IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON GREEN,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>SIDEWINDER DRILLING, INC. and UNION DRILLING, INC.<br><br>　　　　　　Defendants. | Civil Action No.:  16-62 Erie<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, by and through his attorneys, Stember Cohn & Davidson-Welling, LLC, brings this Complaint against Defendants Sidewinder Drilling, Inc. and Union Drilling, Inc., and alleges as follows:

### I.  INTRODUCTION

1.　Sidewinder Drilling, Inc. is an oil and gas drilling company that operates in the Marcellus Shale region.  In 2012, Sidewinder Drilling, Inc. acquired Union Drilling, Inc. ("Union"), and Union merged with and into Sidewinder in or about 2013.

2.　Plaintiff Jason Green was hired by Union Drilling, Inc. in November 2005, and became employed by Sidewinder Drilling, Inc. ("Sidewinder") in 2012 or 2013 as a result of the merger.

3.　Green brings this action because Sidewinder (and Union) failed to pay him lawful overtime wages for all time worked in excess of 40 hours per week, and because Sidewinder terminated him in retaliation for his complaint about not being paid overtime wages.

4. Through this lawsuit, brought pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA") and Pennsylvania law, Green seeks to recover unpaid overtime wages, liquidated damages, penalties, back pay, front pay, compensatory damages, punitive damages, attorneys' fees and costs, and other appropriate relief.

## II. THE PARTIES

5. Green is an adult individual domiciled in the Commonwealth of Pennsylvania. He was employed by Sidewinder Drilling, Inc. (including predecessor Union Drilling, Inc.) from November 2005 until September 21, 2015. Green worked out of Union's district office in Muncy, Pennsylvania, and later out of Sidewinder's district office in Sewickley, Pennsylvania, where managers provided him work assignments and direction, payroll services, and HR support.

6. Union Drilling, Inc. was a Delaware corporation headquartered in Fort Worth, Texas. Union was acquired by Sidewinder Drilling, Inc. in November 2012.

7. Sidewinder Drilling, Inc. is a Delaware corporation headquartered in Houston, Texas. Sidewinder Drilling, Inc. owns and operates a fleet of land drilling rigs and provides contract drilling services to oil and gas exploration and production companies in North America.

8. In or about 2013, Union merged with and into Sidewinder Drilling, Inc. and ceased to exist separate from Sidewinder Drilling, Inc. See **Exhibit 1** (Certificate evidencing termination of existence).

9. Sidewinder Drilling, Inc. is the owner of and successor to Union Drilling, Inc., and it has assumed all of Union's debts and obligations, including Union's contractual and overtime pay obligations. (Sidewinder Drilling Inc. and Union Drilling, Inc. are referred to collectively herein as "Sidewinder" or "Defendant.")

10. At all relevant times, Sidewinder has been an "employer" covered by the Fair Labor Standards Act and applicable Pennsylvania wage laws.

11. At all relevant times, including during 2012 through 2015, Sidewinder was engaged in interstate commerce and Plaintiff provided services in commerce.

### III. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over Plaintiff's FLSA claim under 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and diversity jurisdiction over his state law claims under 28 U.S.C. §§ 1332, since there is complete diversity and the value of the matter in controversy is greater than $75,000. The Court would also have supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391, as the acts that give rise to these claims occurred at least in part in this District, and Defendant employed Plaintiff out of its Sewickley office in this District and it regularly transacts business in this District.

### IV. FACTS

**A.  Green Was Employed By Sidewinder From 2005 Until 2015.**

14. Green began working for Union in 2005 as an oil rig driller.

15. In 2009, Green switched to an electrician/top drive technician position in Union's maintenance department, and he began on-the-job training to learn to maintain and repair Union's fleet of land drilling rigs.

16. After Union was acquired by and merged into Sidewinder, Green continued to work in the maintenance department as an electrician/top drive technician.

3

17. Green was employed as an electrician/top drive technician by Sidewinder (including Union) from 2009 until September 21, 2015. He worked on Sidewinder rigs throughout Pennsylvania during that period, including Tioga, Bradford, Lycoming, Clearfield, Indiana, Cambria, McKean, Allegheny, Butler, Jefferson, Westmoreland, and Washington counties.

18. From 2009 through September 21, 2015, Green's job involved maintenance, installation and removal of electronic and automation equipment, and repair of rig electrical systems and mechanical equipment, including rectifiers and circuits, transformers, power distribution equipment, electrical motors and controllers, centrifugal pumps, motor operated valves, pressure switches, transmitters, electronic controls and pressure regulators.

19. As an electrician/top drive technician, Green was a non-management employee whose job required extensive manual labor on drilling rigs and the performance of repetitive manual and physical tasks.

20. As an electrician/top drive technician, Green did not direct the work of other employees, and he had no authority hire or fire (or make recommendations regarding hiring or firing) other employees.

21. At all times relevant to this Complaint, Green was entitled to be paid a premium of 1.5 times his regular rate of pay for hours worked over 40 per week.

**B.      Sidewinder Did Not Pay Green Overtime Pay Until July 2013.**

22. From 2009 until July 10, 2013, Green was paid $50,000 annually in bi-weekly installments. During this period, he was also paid a set additional amount for each day that he worked on a drilling rig, without regard to the number of hours he worked.

4

23. During 2012 through June 2013, Green's work shifts lasted a minimum of 12 hours, with one day off for every 13 days worked.

24. During that same period, Sidewinder regularly and systematically failed to pay Green a premium of 1.5 times his regular rate of pay for hours worked over 40 in a week, despite knowing it was legally obligated to do so, and despite knowing that Green worked significantly more than 40 hours each week.

## C. **Sidewinder Stops Paying An Overtime Premium In 2015.**

25. Effective July 10, 2013, Sidewinder converted Green to an hourly employee, and it began paying him an overtime premium for hours worked over 40 per week.

26. Sidewinder paid Green an hourly wage from July 10, 2013 until July 1, 2015, with overtime pay for all hours worked over 40 per week.

27. In 2014, Green earned over $100,000 in overtime pay.

28. In 2015, amidst difficulties in the oil and gas industry, Sidewinder cut Green's hourly rate to $34.30. Sidewinder then converted Green back to "salaried" status, but with eligibility for overtime pay.

29. In 2015, Sidewinder also shifted Green's schedule from two-weeks (14-days)-on/two-weeks-off, to three-weeks (21 days)-on/three-weeks-off (with shifts still lasting a minimum of 12 hours).

30. Sidewinder told Green he would be paid a bi-monthly salary plus overtime.

31. On July 1, 2015, Sidewinder began to pay Green a bi-monthly salary of $4,134. See **Exhibit 2** (Personnel change request form). Two weeks later, on July 16, 2015, his bi-monthly salary was reduced again by five percent (5%) to $3,927.30.

32. Beginning July 1, 2015, and without any notice to Green, Sidewinder began to pay Green (and other electricians/top drive techs working out of the Sewickley district office) an overtime premium only for hours worked in excess of 84 per week.

33. For example, from July 15–July 21, 2015, Green worked 84 hours (*i.e.*, 44 overtime hours), exclusive of mandatory safety training. From July 22-28, Green worked 95 hours (*i.e.*, 55 overtime hours), exclusive of mandatory safety training.

34. On August 14, 2015, Sidewinder issued Green's paycheck for overtime hours worked between July 15–July 28, 2015 under Sidewinder's new overtime policy.

35. For the week of July 15 to July 21, 2015, Green worked 84 hours. However, Sidewinder paid him no overtime premium because of its new policy, *i.e.*, no overtime premium until Green worked over 84 in a week.

36. For the week of July 22 to July 28, 2015, Green worked 95 hours. Sidewinder paid Green an overtime premium for the 11 hours he worked over 84 during that work. It did not pay him an overtime premium for the other 44 overtime hours Green worked that week.

37. For the remained of Green's employment by Sidewinder, he was under Sidewinder's new overtime policy.

**D.** **Green Is Terminated Days After Complaining About Non-Payment of Overtime.**

38. On or around August 31, 2015, Green noticed that he had not received payment from Sidewinder for all hours worked in July and August 2015 (including his *per diem* and overtime).

39. On September 1, 2015, Green emailed Human Resources Representative Karla Forrest ("Forrest") to report the underpayment. He advised Forrest that he had not received his

6

*per diem*, or any payment for overtime, and he asked Forrest if she could explain why none had been paid.

40. Forrest agreed to correct the *per diem*, but not the unpaid overtime hours. Instead, Forrest advised Green that Sidewinder would only pay overtime pay "after you have worked over 84 hours for the week which is taken from the timesheets."

41. Green indicated to Forrest that he believed the law required Sidewinder to pay him overtime pay.

42. Later that same day, Sidewinder's Director of HR Stephanie Schultz ("Schultz") and Forrest called Green together. During the call, Schultz reiterated that Sidewinder would not pay overtime pay unless Green worked more than 12 hours a day (*i.e.*, more than 84 hours per week, based upon minimum of seven consecutive 12-hour shifts).

43. Green finished his three-week hitch on September 8, 2015. He then had three weeks off, and he was scheduled to return to work on September 30, 2015.

44. On September 21, 2015—only seven work days after he asserted his right to overtime pay—Green received a call from Schultz terminating his employment. Schultz told Green that he was being laid off due to a "reduction in workforce."

45. While Sidewinder terminated Green, it did not eliminate the electrician/top drive technician position. Instead, after terminating Green, Sidewinder assigned another employee to Green's former electrician/top drive technician position.

## COUNT I

### (Failure to Pay Overtime in Violation of Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*)

46. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

47. The period for this claim is March 17, 2013 through present.

7

48. At all relevant times, Plaintiff has been entitled to the rights, protections, and benefits of the FLSA, 29 U.S.C. §§ 201 *et seq.*

49. The FLSA regulates, among other things, payment of overtime by employers whose employees are engaged in interstate commerce, or production of goods for commerce, or employed in an enterprise engaged in commerce or production of goods for commerce. 29 U.S.C. § 207(a)(1).

50. Sidewinder is subject to the FLSA's overtime requirements as an enterprise engaged in interstate commerce with employees engaged in commerce.

51. Sidewinder (including its predecessor Union) violated the FLSA by failing to keep accurate records and by failing to pay overtime pay to Plaintiff.

52. None of the FLSA's exemptions from overtime obligations apply here. See Section 13, 29 U.S.C. § 213.

53. Since 2009 and throughout the course of his employment as an electrician/top drive technician, Plaintiff regularly worked in excess of 40 hours per week.

54. Plaintiff is entitled to damages equal to 1.5 times his regular rate of pay for all hours worked over 40 in a week for the three years preceding this action, plus periods of equitable tolling, because Sidewinder acted willfully and knew, or showed reckless disregard of whether, the FLSA prohibited its conduct.

55. Plaintiff is entitled to liquidated damages in an amount equal to the unpaid overtime owing as described in FLSA Section 16(b), 29 U.S.C. § 216(b), because Sidewinder had no reasonable or good faith basis for failing to pay him 1.5 times his regular rate of pay.

56. As a result of Sidewinder's willful acts, Plaintiff was deprived of overtime pay in amounts to be determined, and he is entitled to recover such amounts and liquidated damages, pre- and post-judgment interest, counsel fees and costs under 29 U.S.C. § 216(b).

## COUNT II

### (Retaliatory Discharge in Violation of Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*)

57. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

58. At all relevant times herein, Green has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

59. The FLSA prohibits employers such as Sidewinder from retaliating against an employee for opposing practices made unlawful under the Act. 29 U.S.C. § 215(a)(3).

60. Sidewinder terminated Green's employment because of his complaint about non-payment of overtime and assertion of his right to overtime pay.

61. In retaliating against Green for his protected complaint, Sidewinder willfully violated the FLSA, 29 U.S.C. § 215(a)(3).

62. As a result of Sidewinder's willful acts, Green has been deprived of wages and benefits for a period beginning September 21, 2016 (date of termination), and suffered humiliation, embarrassment and other emotional distress.

63. Plaintiff is entitled to recovery of his lost wages, compensatory damages for emotional distress, liquidated damages, punitive damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT III

### (Violation of Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333 *et seq.*)

64. Plaintiff incorporates all allegations in the preceding paragraphs.

65. The period for this claim is March 17, 2013 through present.

66. At all relevant times, Plaintiff was entitled to the rights, protections and benefits of the Pennsylvania Minimum Wage Act, 43 P.S. § 333 *et seq.* ("PMWA").

67. The PMWA provides that employees "shall be paid overtime not less than one and one-half times the employe's regular rate." 43 P.S. § 333.104(c).

68. Since 2009 and throughout the course of his employment as an electrician/top drive technician, Plaintiff regularly worked in excess of 40 hours per week.

69. Sidewinder (including its predecessor Union) willfully violated the PMWA by failing to pay Plaintiff 1.5 times his regular rate of pay for all hours worked over 40 in a week.

70. Sidewinder knew or should have known that its compensation practices unlawfully denied Plaintiff 1.5 times his regular rate of pay for all hours worked over 40 in a week.

71. By failing to pay overtime to Plaintiff, Sidewinder is liable under the PMWA, 43 P.S. § 333.113, for overtime, costs, reasonable attorneys' fees, and interest.

## COUNT IV

**(Breach of Contract: Failure to Pay Overtime Wages)**

72. Plaintiff incorporates all allegations in the preceding paragraphs.

73. The period for this claim is March 17, 2012 through present.

74. Sidewinder contractually agreed to employ Plaintiff as an electrician/top drive technician from 2009 until September 21, 2015.

75. The employment contract included an implied term to pay Plaintiff overtime pay prior to July 1, 2015. See Sea Grove Bldg. & Loan Ass'n of Cape May Point v. Stockton, 148 Pa. 146, 23 A. 1063 (Pa. 1892) ("all contracts are presumed to have been made with

10

reference to existing laws, which, where applicable, form a part of the contract itself.");
cf. 43 P.S. § 331.13 ("any agreement to work for less" would be unenforceable as a matter of law). The employment contract also included an express term to pay Plaintiff overtime pay as of July 1, 2015.

76. Sidewinder breached the employment contract by failing to pay Plaintiff overtime due, as required by Pennsylvania law.

77. By failing to pay Plaintiff overtime pay (*i.e,* time-and-a-half) for hours worked over 40 per week, Sidewinder violated its employment contract with Plaintiff.

78. Sidewinder is liable to Plaintiff for damages as a result of its failure to pay him overtime (*i.e*, time-and-a-half) for hours worked over 40 per week.

## COUNT V

**(Violation of Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*)**

79. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

80. The period for this claim is March 17, 2013 through present.

81. As alleged above, Sidewinder and Plaintiff were parties to an employment contract from 2009 until September 21, 2015.

82. As an implied term of that contract, Sidewinder was obligated to Plaintiff in accordance with applicable wage and hour laws. See Slagan v. John Whitman & Associates, No. CIV. A. 97-3961, 1997 WL 587354, *5 (E.D. Pa. Sept. 10, 1997) (compliance with applicable law is implied term of employment contract for purposes of WPCL).

83. Sidewinder (including Union) willfully failed to pay Plaintiff contractual overtime wages and continued its failure for over 30 days after his regularly scheduled paydays.

11

84. Under the WPCL, therefore, Plaintiff is entitled to liquidated damages in the amount of 25% of wages and benefits due, or $500, whichever is greater, in addition to any unpaid wages and benefits. 43 P.S. § 260.10.

85. Pursuant to 43 P.S. §260.9a, Plaintiff is also entitled to costs and reasonable attorneys' fees incurred in bringing this claim.

## COUNT VI

### (Restitution based upon Unjust Enrichment)

86. Plaintiff incorporates all allegations in the preceding paragraphs.

87. The period for this claim is March 17, 2012 through present.

88. Throughout the relevant period, Plaintiff was required to work long hours and regularly to work more than 40 hours per week.

89. In Pennsylvania, an employer's failure to pay an employee for time worked may form the basis of an unjust enrichment claim. See, e.g., Braun v. Wal-Mart Stores, Inc., 24 A.3d 875 (Pa. Super. 2011); Lugo v. Farmer's Pride, Inc., 967 A.2d 963 (Pa. Super. 2009).

90. Sidewinder accepted a direct and substantial benefit from the overtime work performed by Plaintiff, and no circumstances exist to justify Sidewinder's retention of the unpaid overtime wages.

91. Allowing Sidewinder to retain these unpaid overtime wages is unjust since: it is not entitled to these funds; keeping them would be a substantial windfall; the amount is more than *de minimus*; and Sidewinder controls these funds now only because it has long withheld wages due.

92. Accordingly, Plaintiff is entitled to restitution of his overtime due and owing and to such other relief as the Court deems fair and equitable.

12

## V. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Sidewinder (including Union) as follows:

   A.   On Count I (FLSA unpaid overtime):

   (i)   Declare that Sidewinder violated the overtime provisions of the FLSA, 29 U.S.C. § 207; that Sidewinder's violations were willful; that Sidewinder failed to keep accurate records of time worked; and that Plaintiff is entitled to be paid 1.5 times his regular rate for all work in excess of 40 hours per week, and an equal amount as liquidated damages;

   (ii)  Award Plaintiff damages in the amount of unpaid overtime compensation to be proven at trial;

   (iii) Award Plaintiff liquidated damages in an amount equal to the overtime compensation shown to be owed pursuant to 29 U.S.C. § 216(b), or, if liquidated damages are not awarded, then in the alternative, prejudgment interest;

   (iv)  Award reasonable attorneys' fees and costs;

   B.   On Count II (FLSA retaliatory discharge):

   (i)   Declare that Sidewinder violated the anti-retaliation provisions of the FLSA, 29 U.S.C. § 215(a)(3); that Sidewinder's violations were willful; that Plaintiff is entitled to judgment on his retaliation claim, and to back pay, front pay, compensatory damages, punitive damages, and liquidated damages;

   (ii)  Award Plaintiff backpay, including all lost wages, benefits, bonuses, and other emoluments of employment, and front pay for a reasonable period.

   (iii) Award Plaintiff compensatory damages for emotional distress, pain, humiliation, and embarrassment caused by Sidewinder's wrongful acts.

   (iv)  Award Plaintiff punitive damages;

   (iii) Award Plaintiff liquidated damages, or, if liquidated damages are not awarded, then in the alternative, prejudgment interest;

   (iv)  Award reasonable attorneys' fees and costs;

13

C. On Count III (PMWA):

(i) Declare that Sidewinder violated the PMWA;

(ii) Award damages to Plaintiff in the amount of unpaid overtime according to proof at trial;

(ii) Award Plaintiff pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

(iii) Award reasonable attorneys' fees and costs;

D. On Count IV (Breach of Contract):

(i) Declare that Sidewinder breached its employment contract with Plaintiff;

(ii) Award Plaintiff damages for the amount of unpaid overtime, including interest;

E. On Count V (Violation of WPCL):

(i) Declare that Sidewinder violated the WPCL by failing to pay overtime to Plaintiff; that Sidewinder acted without good faith or reasonable grounds; and that Plaintiff is entitled to liquidated damages;

(ii) Award damages to Plaintiff in the amount of unpaid overtime wages due;

(iii) Award liquidated damages to Plaintiff in an amount equal to 25% of unpaid overtime wages and benefits, or $500, whichever is greater;

(iv) Award reasonable attorneys' fees and costs;

F. Count VI (Restitution based upon Unjust Enrichment)

(i) Award Plaintiff restitution in the amount of his unpaid overtime wages, including interest thereon;

G. Attorneys' fees and costs of the action;

H. Pre- and post-judgment interest; and

I. Such other relief as this Court may deem just and proper.

## VI. DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all claims and/or issues so triable.

                                                       Respectfully submitted,

Dated: March 17, 2016
                                                s/Maureen Davidson-Welling
                                                Maureen Davidson-Welling
                                                PA ID No. 206751
                                                mdw@stembercohn.com
                                                Vincent J. Mersich
                                                PA ID No. 310971
                                                vmersich@stembercohn.com
                                                **STEMBER COHN &**
                                                        **DAVIDSON-WELLING, LLC**
                                                The Hartley Rose Building
                                                425 First Avenue, 7th Floor
                                                Pittsburgh, PA 15219
                                                T.: (412) 338-1445
                                                F.: (412) 338-1446

                                                *Attorneys for Plaintiff*